UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CYNTHIA F.,

                            Plaintiff,

                                                    5:20-CV-1488
v.                                                  (GTS/TWD)

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

                            Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC         JUSTIN M. GOLDSTEIN, ESQ.
  Counsel for Plaintiff                     KENNETH R. HILLER, ESQ.
6000 North Bailey Avenue – Suite 1A
Amherst, NY 14226

SOCIAL SECURITY ADMINISTRATION             CANDACE LAWRENCE, ESQ.
OFFICE OF GENERAL COUNSEL
  Counsel for Defendant
J.F.K. Federal Building, Suite 625
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

### DECISION and ORDER

Currently before the Court, in this action filed by Cynthia F. ("Plaintiff") against the

Acting Commissioner of Social Security Kilolo Kijakazi ("Defendant")[1] pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3), are (1) Plaintiff's motion for judgment on the pleadings, and (2)

Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 8, 11.)  For the reasons set forth

---

[1]    Defendant was sworn in as the Acting Commissioner of Social Security on July 9, 2021, and therefore should be substituted for Andrew Saul as the defendant in the lawsuit.

below, Plaintiff's motion for judgment on the pleadings is granted, and Defendant's motion for

judgment on the pleadings is denied.

## I.   RELEVANT BACKGROUND

### A.   Relevant Facts

Plaintiff was born in 1970, making her 48 years old at the time she applied for Title II

Disability Insurance Benefits, and 49 years old at the date of the ALJ's decision regarding her

application. (T. 12-25 [ALJ's Decision].)[2] Plaintiff alleges she is disabled due to the following

nine conditions: (1) post-concussion syndrome with persistent cognitive deficits and fatigue; (2)

traumatic brain injury ("TBI"); (3) cervical degenerative disc disease ("DDD"), congenital

cervical spinal stenosis, and cervical radiculopathy; (4) posttraumatic headaches; (5) residual eye

abnormalities with hyperopia and esophoria consistent with a fourth cranial nerve injury; (6)

nystagmus; (7) occipital neuralgia; (8) chronic fatigue; and (9) mood disorder. (Dkt. No. 8, at 2.)

### B.   Procedural History

On October 18, 2019, Plaintiff filed a Title II application for disability insurance benefits,

alleging disability beginning on November 1, 2015. (T. 15.) The claim was initially denied on

March 19, 2019, and was again denied upon reconsideration on May 22, 2019. (T. 15.) Plaintiff

filed a written request for a hearing that was received on May 28, 2019. (T. 15.) Plaintiff

appeared and testified at the administrative hearing on January 22, 2020. (T. 15.) On February

21, 2020, Administrative Law Judge ("ALJ") Robyn L. Hoffman issued a written decision

finding that Plaintiff was not disabled under the Social Security Act. (T. 25.) On October 6,

---

[2]      The Administrative Transcript is found at Dkt. No. 6. Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing
system.

2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

      **C.      The ALJ's Decision**

      Generally, in her decision, the ALJ made the following eleven findings of fact and conclusions of law. (T. 15-25.)

      First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2020. (T. 17.)

      Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date (i.e., November 23, 2015.) (T. 17.)

      Third, the ALJ found that Plaintiff has the following severe impairments: post-concussion syndrome/traumatic brain injury; cervical degenerative disc disease/congenital cervical spinal stenosis; and posttraumatic headaches (not intractable). (T. 17.) More specifically, the ALJ found that the record contains clinical and diagnostic findings showing that these impairments more than minimally affect Plaintiff's ability to perform basic work activities during the relevant period. (T. 17.) The ALJ found that, although there is evidence of Plaintiff's history of obesity, asthma, sleep apnea, elbow and knee injuries, and vision changes, the medical record does not support a finding of additional "severe" impairments because most, if not all, of these conditions are resolved, require little or no treatment, or are adequately controlled with treatment, and none impose more than minimal limitations on Plaintiff's ability to perform basic work activities. (T. 18.) The ALJ found that the record also does not establish any "severe" mental impairments, and that Plaintiff's traumatic brain injury, although causing more than minimal work-related physical limitations, has no more than minimal effect on her ability to perform basic mental work

activities. (T.18.) The ALJ found that Plaintiff is mildly limited, at most, with respect to the four

broad areas of mental functioning set out in the relevant regulations.[3] (T. 18-19.)

Fourth, the ALJ found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (T.

19.)

Fifth, the ALJ found, after carefully considering the entire record, that Plaintiff has a

residual functional capacity ("RFC") to perform a range of light work, and that Plaintiff can

occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, sit for up to six

hours, stand or walk for six hours in an eight-hour day with normal breaks, and occasionally

stoop, but that Plaintiff should avoid the following activities: working at unprotected heights;

climbing ladders, ropes, or scaffolds; and working in close proximity to dangerous machinery or

moving mechanical parts of equipment. (T. 19.) The ALJ found that, even considering Plaintiff's

alleged symptoms and their effects on her daily functioning, the record does not support

limitations beyond those provided for within the above-listed RFC determination. (T. 20.) The

ALJ found persuasive the opinions of Dr. Patrick Hughes, M.D., Dr. Donald Jacob, M.D., Dr.

Kalyani Ganesh, M.D., but found unpersuasive the opinion of Dr. Austin Tsai, M.D. (T. 20-22.)

The ALJ further found that Plaintiff's medical records indicate that, when compliant, her

prescribed treatment reduces her symptoms. (T. 23.) The ALJ found that Plaintiff's personal

activities, such as performing personal care tasks, doing household chores, and socializing,

---

[3]     The four areas of mental functioning set out in the relevant regulations include the
following: "the ability to understand, remember, or apply information; interact with others;
concentrate, persist, or maintain pace; and adapt or manage oneself." (T. 18 [citing 20 C.F.R.,
Part 404, Subpart P, Appendix 1].)

among others, are not consistent with significant work-related mental limitations. (T. 23.) The ALJ found that, although Plaintiff's medically determinable impairments could reasonably cause some of her alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence of record, meaning the limitations in the RFC are appropriate. (T. 23.)

Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 23.) More specifically, the ALJ found that Plaintiff has past relevant work as a registered nurse, but that descriptions of this role indicate it requires lifting more than 20 pounds, which Plaintiff is unable to do. (T. 23-24.)

Seventh, the ALJ found that Plaintiff, who was born on December 1, 1970, and was 45 years old on the alleged disability onset date, is a "younger individual age 18-49," as defined by 20 C.F.R. § 404.1563. (T. 24.)

Eighth, the ALJ found that Plaintiff has at least a high school education and is able to communicate in English. (T. 24.)

Ninth, the ALJ found that the transferability of job skills is not material to the disability determination, because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills. (T. 24.)

Tenth, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff can perform certain jobs that exist in significant numbers in the national economy. (T. 24.) The ALJ found that a review of the pertinent Social Security Rulings, including SSR 85-15 and SSR 83-14, reveals that Plaintiff's non-exertional limitations do not significantly erode her available occupational base for unskilled light work. (T. 25.)

Eleventh, the ALJ found that Plaintiff has not been under a disability, as defined by the
Social Security Act, from November 23, 2015, through the date of the ALJ's decision. (T. 25.)

    **D.**    **The Parties' Briefing on Their Motions**

        **1.**    **Plaintiff's Motion for Judgment on the Pleadings**

Generally, in her motion, Plaintiff sets forth two arguments. (Dkt. No. 8.)

First, Plaintiff argues that the ALJ erred when failing to identify substantial evidence
supporting the RFC. (*Id.* at 11-24.) More specifically, Plaintiff argues that the ALJ erred in the
following five ways: (1) the ALJ failed to indicate the persuasiveness of the medical opinions of
Drs. Ditota and Todd, which specifically address Plaintiff's vision difficulties, and therefore
erred by rejecting "vision changes" as not severe at Step Two and not including vision-related
limitations in the RFC determination (*id.* at 12-14); (2) the ALJ improperly found Dr. Tsai's
opinion to be unpersuasive for the following six reasons: (a) the ALJ failed to acknowledge that
Dr. Tsai was a treating physician, which Plaintiff argues makes his opinion inherently more
reliable than those provided by the State agency consultants or independent medical examiners
(*id.* at 14-15); (b) the ALJ cherry-picked findings in Dr. Tsai's treatment notes and ignored the
treatment notes supporting his opinion (*id.* at 15-16); (c) the ALJ improperly considered the fact
that Dr. Tsai's assessment was "merely a check-box form with few, if any, references to specific
clinical or diagnostic findings" (*id.* at 16-17); (d) the ALJ failed to identify specific evidence in
the record supporting her finding that the limitations Dr. Tsai proposed were inconsistent with
other medical opinions in the record (*id.* at 17-18); (e) the ALJ failed to assess certain medical
evidence that corroborates Dr. Tsai's opinion, including the treatment notes from the Concussion
Clinic (*id.* at 18-19); and (f) the ALJ did not include any modifications from the most recent
medical findings in the RFC (*id.* at 20-21); (3) in finding that the opinions of Drs. Hughes and

Jacob were more persuasive, the ALJ failed to acknowledge that these opinions did not include review of later opinions from Drs. Tsai and Ditota, which contained greater limitations (*id.* at 21-22); (4) the ALJ erred in determining that "the state agency assessments[4] are supported by a detailed narrative analysis that contains references to specific medical evidence" (*id.* at 22-23); and (5) the ALJ erred by not providing limited weight to the consulting physicians' opinions or reports where the medical evidence and treating physicians' opinions show additional functional limitations and a combination of exertional and non-exertional limitations preventing all work (*id.* at 23-24.)

Second, Plaintiff argues that the ALJ erred by comparing Plaintiff's subjective complaints to the RFC determination and then finding the complaints unsupported. (*Id.* at 24-25.) More specifically, Plaintiff argues that the regulations and case law do not support the ALJ basing a credibility determination solely upon whether Plaintiff's allegations are consistent with the RFC finding. (*Id.* at 24.) Plaintiff argues that the ALJ improperly discounted Plaintiff's allegations as inconsistent with Plaintiff's improvement, noncompliance with treatment, and basic activities, because the ALJ failed to identify which portions of the objective evidence do not support Plaintiff's allegations. (*Id.* at 25.) Plaintiff argues that the evidence the ALJ ignored, including medical opinions and extensive neurological and mental examination findings, support the additional limitations Plaintiff alleges, and that the ALJ's failure to consider all evidence when determining that Plaintiff's subjective symptomology was inconsistent with the record requires remand. (*Id.*)

### 2.   Defendant's Motion for Judgment on the Pleadings

---

[4]      These assessments include the opinion of Drs. Miller, Siddiqui, and Ganesh. (Dkt. No. 8, at 22-24.)

Generally, in her motion, Defendant sets forth four arguments. (Dkt. No. 11.)

First, Defendant argues that Drs. Ditota and Todd did not provide medical opinions that the ALJ must consider under 20 C.F.R. § 404.1520c. (*Id.* at 6-10.) More specifically, Defendant argues that the assessments from Drs. Ditota and Todd are not "medical opinions," but rather constitute "other medical evidence," consisting solely of diagnoses, clinical findings, and prognosis with treatment. (*Id.* at 6.)[5] Defendant argues that, because these assessments are not true medical opinions, the articulation requirement identified by Plaintiff does not apply. (*Id.* at 8.) Defendant further argues that the records fail to contradict the ALJ's conclusions that Plaintiff's condition improved with occupational therapy and prism glasses, that she sought little treatment for the condition, and that it imposed no more than minimal limitations. (*Id.*) Defendant argues that, although the ALJ must review all of the evidence relevant to an individual's claim, she need not discuss every piece of evidence submitted. (*Id.*) Defendant argues that, although Plaintiff may disagree with the ALJ's finding that her reported vision changes were not a severe impairment, she failed to show that a "'reasonable factfinder would have to conclude otherwise.'" (*Id.* at 10 [quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)].)

Second, Defendant argues that the ALJ properly found that Dr. Tsai's opinion was not persuasive. (*Id.* at 10-18.) More specifically, Defendant argues that Dr. Tsai's opinion is not "inherently more reliable" because he is a treating medical provider. (*Id.* at 10.) Defendant

---

[5]     Defendant argues that the only portion of Dr. Todd's assessment that does not constitute "other medical evidence" is his opinion that Plaintiff was "temporarily, totally disabled." (Dkt. No. 11, at 7.) Defendant argues, however, that this statement is "evidence that is inherently neither valuable nor persuasive" and requires no analysis from the ALJ. (*Id.* [quoting 20 C.F.R. § 404.1520b(c)].)

argues that the ALJ properly considered the fact that Dr. Tsai's opinion was a "check-box form with few, if any, references to specific clinical or diagnostic findings to support the expressed opinions . . . ." (*Id.* at 11.) Defendant argues that the ALJ properly found that Dr. Tsai's treatment notes fail to support the limitations he proposed, and that, based on the largely normal findings in Dr. Tsai's treatment notes, the ALJ properly concluded that Dr. Tsai's recommendations were not well-supported. (*Id.* at 12-13.) Defendant argues that the relevant regulations and Second Circuit case law do not require the ALJ to "fully discuss" Dr. Tsai's treatment notes, as Plaintiff contends. (*Id.* at 13.) Defendant argues that Plaintiff's allegation that the ALJ "cherry-picked from Dr. Tsai's treatment notes" is not reason for remand, because Plaintiff fails to show how the mild findings she identifies (i.e., trace edema, mild swelling, and osteopenia) support Dr. Tsai's disabling limitations or how they would further limit her RFC. (*Id.* at 14.) Defendant argues that the ALJ properly considered Dr. Tsai's limitations as inconsistent with the other medical opinions or medical evidence of record. (*Id.* at 14-15.)

Defendant further argues that the ALJ does not have to discuss the treatment relationship between Plaintiff and Dr. Tsai where, as here, the ALJ did not conclude that two or more medical opinions about the same issue were both equally well-supported and consistent with the record but not exactly the same. (*Id.* at 16.) Defendant argues that contrary to Plaintiff's contention that the ALJ erred in not discussing treatment notes from the Concussion Clinic,[6] the ALJ need not recite every piece of evidence contributing to her decision, so long as the record permits adequate review. (*Id.* at 16-17.) Defendant also argues that, although Plaintiff's failure to seek medical attention does not necessarily preclude a finding of disability, it "seriously undermines"

---

[6]     Defendant contends that, contrary to Plaintiff's assertion, a review of the ALJ decision clearly indicates that the ALJ considered the Concussion Clinic records. (Dkt. No. 11, at 17.)

a disability claim. (*Id.* at 17 [quoting *Miller v. Comm'r of Soc. Sec.*, 16-CV-0942, 2017 WL 4286295, at *6 (N.D.N.Y. Sept. 26, 2017) (Dancks, M.J.)].)

Third, Defendant argues that the opinions of Drs. Hughes and Jacob were not stale. (*Id.* at 18-20.) More specifically, Defendant argues that Plaintiff identifies no new significant diagnosis or deterioration in her condition that would render stale the challenged opinions. (*Id.* at 18-19.)

Fourth, Defendant argues that the ALJ properly considered Dr. Ganesh's opinions and the findings of the State agency medical consultants, including Dr. H. Miller, M.D., and Dr. S. Siddiqui, M.D. (*Id.* at 20-23.) Defendant argues that Dr. Miller discussed the normal findings from Plaintiff's most recent examination, as well as various diagnoses made by her treating providers, and that Dr. Siddiqui affirmed Dr. Miller's determination. (*Id.* at 22.) Defendant argues that, contrary to Plaintiff's contention, the ALJ stated that the state agency findings were consistent with Dr. Ganesh's opinion. (*Id.*) Defendant argues that the ALJ appropriately recognized inconsistencies between Dr. Ganesh's opinion and others when she stated that, although "there is clearly some support for Dr. Ganesh's and the state agency opinions, [she was] generally more persuaded by the . . . assessments of Dr. Hughes and Dr. Jacob." (*Id.* [quoting T. 21].)

Fifth, Defendant argues that the ALJ properly evaluated Plaintiff's statements about her symptoms and limitations. (*Id.* at 23-25.) Defendant argues that, although the ALJ stated that "the record as a whole does not support limitations beyond those provided for within the . . . [RFC]," this was not the ALJ's sole justification for finding Plaintiff's subjective statements less persuasive. (*Id.* at 23.) Defendant argues that the ALJ provided additional justifications, including Plaintiff's improvement with treatment, her documented history of treatment noncompliance, and her extensive daily activities, as a means of finding that Plaintiff's

10

allegations were unsupported. (*Id.*) Defendant further argues that the ALJ did identify which of Plaintiff's allegations were unsupported by the objective evidence, and that these reasons were relevant considerations. (*Id.* at 23-24.) Defendant finally argues that the ALJ properly considered Plaintiff's subjective statements, even where the ALJ did not cite to the specific evidence Plaintiff highlights (i.e., the Concussion Clinic treatment notes, Dr. Ditota's assessment, or Dr. Todd's report). (*Id.* at 24.)

## II.   APPLICABLE LEGAL STANDARDS

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord*, *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

11

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination

considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.        Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v.

Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental
> ability to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled
> without considering vocational factors such as age, education, and
> work experience; the [Commissioner] presumes that a claimant
> who is afflicted with a "listed" impairment is unable to perform
> substantial gainful activity.  Assuming the claimant does not have
> a listed impairment, the fourth inquiry is whether, despite the

claimant's severe impairment, he has the residual functional
capacity to perform his past work.  Finally, if the claimant is
unable to perform his past work, the [Commissioner] then
determines whether there is other work which the claimant could
perform.  Under the cases previously discussed, the claimant bears
the burden of the proof as to the first four steps, while the
[Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord*, *McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

### A.    Whether the ALJ Properly Evaluated the Medical Evidence and Medical Opinions in Forming the RFC Determination

After carefully considering the matter, the Court answers the question in the negative for

the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 8.) To those reasons, the Court

adds the following analysis.

As previously discussed above in Part I.D.1. of this Decision and Order, Plaintiff

challenges a variety of aspects of the ALJ's RFC determination, including the ALJ's lack of

review of the opinions of Drs. Ditota and Todd, her finding that Dr. Tsai's opinion was

unpersuasive, and her assessment of the opinions of Drs. Jacob, Hughes, Ganesh, Miller, and

Siddiqui. (*Id*.) As the Court discusses below, only Plaintiff's challenge regarding Dr. Tsai's

opinion requires remand.

### 1.    Opinions of Drs. Ditota and Todd

Plaintiff argues that the ALJ erred when failing to indicate the persuasiveness of the

medical assessments provided by Drs. Ditota and Todd, which specifically address Plaintiff's

vision difficulties. (*Id.* at 12-14.) Under the new regulations applicable to Plaintiff's application

for disability benefits, the ALJ "is not required to give specific evidentiary weight to a particular

medical opinion," but is still "required to articulate how [s]he considered the medical opinion, including explaining how [s]he considered the 'supportability' and 'consistency' factors." *James W. v. Kijakazi*, 20-CV-0954, 2022 WL 685288, at *3 (N.D.N.Y. Mar. 8, 2022) (Stewart, M.J.) (internal quotation marks omitted); *Lisa B. v. Comm'r of Soc. Sec.*, 21-CV-0493, 2022 WL 1473277, at *3 (N.D.N.Y. May 10, 2022) (Hummel, M.J.). The pertinent regulation states that ALJs "will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2); *Tenesha G. v. Comm'r of Soc. Sec.*, 20-CV-1070, 2022 WL 35998, at *4 (N.D.N.Y. Jan. 4, 2022) (Hurd, J.) (highlighting that "the Regulations obligate the ALJ to explain how he or she considered these two factors"). "'If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required.'" *Lisa B.*, 2022 WL 1473277, at *3 (quoting *Rivera v. Comm'r of the Soc. Sec. Admin.*, 19-CV-4630, 2020 WL 8167136, at *15 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021)).

There is no question that the ALJ's decision does not explicitly address the opinions of Drs. Todd and Ditota. (T. 15-25.) Defendant argues that the ALJ did not err, however, because these assessments are "other medical evidence," rather than "medical opinions," and the relevant regulation's requirement that an ALJ address the supportability and consistency factors does not apply to "other medical evidence." (Dkt. No. 11, at 6-10.) "'A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions.'" *Melissa S. v. Comm'r of Soc. Sec.*, 21-CV-0420, 2022 WL 1091608, at *2 (N.D.N.Y. Apr. 12, 2022) (Stewart, M.J.) (quoting 20 C.F.R. § 404.1513(a)(2)). "Put another way, '[a] medical opinion discusses plaintiff's ability

to perform physical demands of work activities; mental demands of work activities; other demands of work; and adapt to environmental conditions.'" *Melissa S.*, 2022 WL 1091608, at *2 (quoting *Michael H. v. Saul*, 20-CV-0417, 2021 WL 2358257, at *5 (N.D.N.Y. June 9, 2021) (D'Agostino, J.)). On the other hand, the regulations define "other medical evidence" as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the plaintiff's] impairments, [the plaintiff's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3); *Melissa S.*, 2022 WL 1091608, at *2.

Dr. Ditota's assessment on November 7, 2017,[7] is not a "medical opinion," and therefore is not subject to the regulation's requirement that the ALJ analyze the assessment's supportability and consistency. Dr. Ditota's assessment is best characterized as providing symptoms, diagnoses, and clinical findings. (T. 502-06.) At the end of Dr. Ditota's assessment, there are approximately five questions addressing Plaintiff's "ability to do work-related physical activities." (T. 505-06.) On the last question, Dr. Ditota circled "visual" in a list of "other" limitations and checked the box for "limited." (T. 506.) However, directly below that question, Dr. Ditota checked the box for a statement that reads, "I cannot provide a medical opinion regarding this individual's *ability to do work-related activities*." (T. 506 [emphasis added].) Not only does Dr. Ditota's checking of the "limited" box with respect to Plaintiff's vision not constitute identifying an "impairment-related limitation or restriction" (given Dr. Ditota's statement that he cannot provide a medical opinion regarding Plaintiff's "ability to do work-

---

[7]     Plaintiff states in her memorandum of law that this assessment was completed on November 1, 2018. (Dkt. No. 8, at 13.) However, the assessment Plaintiff cites that states the examination occurred on November 7, 2017. (T. 502-506.)

related activities"), but Dr. Ditota's assessment does not address what Plaintiff "can still do despite [her] impairments." *See Ramirez v. Saul*, 20-CV-2922, 2021 WL 4943551, at *11 (S.D.N.Y. July 2, 2021), *report and recommendation adopted*, 20-CV-2922, 2021 WL 4264253 (S.D.N.Y. Sept. 20, 2021) ("Dr. Schwartz's statement is not a medical opinion, as it neither discusses what Plaintiff can still do despite his impairments, nor whether Plaintiff has impairment-related limitations or restrictions on his ability to perform work-related tasks."). Dr. Ditota's assessment therefore is not a "medical opinion" and is "more properly considered 'other medical evidence' under 20 C.F.R. § 404.1513(a)(3)." *Kathleen M. v. Comm'r of Soc. Sec.*, 20-CV-1040, 2022 WL 92467, at *7 (N.D.N.Y. Jan. 10, 2022) (Dancks, J.) (finding doctor's assessment was not a medical opinion "because it [did] not address what Plaintiff could still do despite her impairments" and gathering cases supporting that principle); *Shawna Ann J. v. Comm'r of Soc. Sec.*, 19-CV-1098, 2021 WL 733804, at *4-5 (W.D.N.Y. Feb. 25, 2021) (highlighting that "symptoms, diagnosis, and prognosis were removed from the definition of 'medical opinions' under the new regulations).

The Court's review of Dr. Todd's assessment on January 5, 2017, yields the same result. Dr. Todd's assessment outlines his summary of Plaintiff's medical records, Plaintiff's subjective history of injury and symptoms, Dr. Todd's diagnoses of Plaintiff after his examination of her, and his proscribed ongoing treatment (i.e., ice applied to the skull base, medications, etc.). (T. 288-298; 919-930.) This assessment does not discuss "what [Plaintiff] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions." *Melissa S.*, 2022 WL 1091608, at *2. The only statement Dr. Todd included in his assessment related to Plaintiff's abilities or limitations is the following: "The claimant is temporarily, totally disabled." (T. 296.) This statement, however, constitutes evidence that is "inherently neither

valuable nor persuasive," because it is a statement on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3)(i) (stating the ALJ need not "provide any analysis about how [she] considered" certain evidence, including "[s]tatements that [the plaintiff is or is not] disabled, blind, able to work, or able to perform regular or continuing work," because this evidence is "inherently neither valuable nor persuasive" to whether Plaintiff is disabled under the Social Security Act); *Disla v. Comm'r of Soc. Sec.*, 20-CV-6663, 2022 WL 1063753, at *13 (S.D.N.Y. Feb. 4, 2022) ("[C]onclusory statements by a claimant's provider concerning issues reserved to the Commissioner—for instance, whether the claimant is disabled under the Act—are inherently neither valuable nor persuasive and will not be analyzed by the ALJ.") (internal quotation marks omitted). Because neither assessment constitutes a "medical opinion" under the Regulations, the ALJ did not err in failing to analyze each assessment's persuasiveness, including the supportability and consistency factors.

To the extent Plaintiff challenges the ALJ's Step Two finding that Plaintiff's vision changes did not constitute a "severe impairment" or that the RFC should have contained vision-related limitations,[8] the Court finds that substantial evidence exists to support the ALJ's findings about Plaintiff's vision. *See Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (holding the

---

[8]    At Step Two, the ALJ stated the following about Plaintiff's vision changes: "The medical record does not support a finding of additional 'severe' impairments. There is evidence that the claimant also has a history of obesity, asthma, sleep apnea, elbow and knee injuries, and vision changes. However, most, if not all, of these conditions have either resolved, required little or no treatment, or been adequately controlled with treatment, and none have imposed more than minimal limitations on the claimant's ability to perform basic work activities for a continuous period of at least twelve months." (T. 18.) In the portion of her decision addressing Plaintiff's RFC, the ALJ found persuasive the opinions of Drs. Ganesh, Hughes, and Jacob, and also highlighted the fact that Plaintiff's "medical records indicate that when compliant, her prescribed treatment has been affective at reducing her symptoms," which includes "evidence showing that [Plaintiff's] vision issues improved with occupational therapy and glasses . . . ." (T. 21, 23.)

substantial evidence standard "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Preliminarily, an ALJ need not "discuss every piece of evidence submitted." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). An ALJ's failure to mention particular evidence does not mean it was not considered, nor does it mean the ALJ improperly "cherry picked" the evidence. *Dowling v. Comm'r of Soc. Sec.*, 14-CV-0786, 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015) (Suddaby, C.J.); *Black v. Apfel*, 143 F.3d 383, 386 (2d Cir. 1998). "'When . . . the evidence of record permits [a court] to glean the rationale of an ALJ's decision, [courts] do not require that [s]he have mentioned every item of testimony presented to h[er] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability.'" *Dowling*, 2015 WL 5512408, at *11 (quoting *Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988)).

As Defendant points out in her memorandum of law, although the ALJ did not discuss Dr. Todd's assessment, she did discuss Dr. Jacob's more recent June 2017 Worker's Compensation examination—a report that included a detailed discussion of Plaintiff's medical records, including Dr. Todd's report. (T. 20, 21, 23, 331-61.) Dr. Jacob's 30-page report also addressed his physical examination of Plaintiff on June 2, 2017, which included normal findings regarding her vision. (T. 344.) When reciting her medical history to Dr. Jacob, Plaintiff also stated that the glasses she received from her eye doctor "helped her vision and helped her balance somewhat." (T. 340.) After performing his physical examination and thorough examination of Plaintiff's records, Dr. Jacob did not include a visual limitation in his medical opinion. (T. 338.)

18

Likewise, the ALJ addressed Dr. Ganesh's more recent examination and findings in her decision. (T. 20-21.) Dr. Ganesh is a neurologist who evaluated Plaintiff one year after Dr. Ditota's one-time assessment on November 7, 2017. (T. 503-04, 507-09.) Dr. Ganesh's opinion from December 6, 2018, found that Plaintiff's vision was 20/25 in her right eye, 20/20 in her left eye, and 20/25 on a Snellen chart at 20 feet with her glasses. (T. 508.) Dr. Ganesh's report also shows normal findings regarding Plaintiff's vision. (T. 508.) Like Dr. Jacob, Dr. Ganesh did not opine on any visual limitation for Plaintiff. (T. 509.)

Each of these reports supports the ALJ's finding that Plaintiff's vision changes do not constitute a "severe impairment," as well as the ALJ's decision not to include limitations related to Plaintiff's vision in the RFC determination. (T. 18, 21, 23.) Because the ALJ is not required to mention every piece of evidence in her decision where "the evidence of record permits [the Court] to glean the rationale of [the] ALJ's decision," the Court finds that the ALJ's determinations regarding Plaintiff's vision changes are supported by substantial evidence and do not require remand. *Dowling*, 2015 WL 5512408, at *11; *see also Bonet*, 523 F. App'x at 59 ("[I]t is clear from the record that the ALJ did consider the [vision changes] and simply reached a conclusion, supported by substantial evidence, with which [Plaintiff] does not agree.").

### 2.  Opinion of Treating Physician Dr. Tsai

The Court reaches a different conclusion with regard to the ALJ's assessment of the medical opinion of Dr. Austin Tsai, which the Court finds to be improper and appropriate for remand. In her decision, the ALJ addressed Dr. Tsai's assessment of both Plaintiff's physical and mental limitations. When finding Dr. Tsai's opinion unpersuasive, the ALJ stated, as follows:

> There is a medical opinion from Austin Tsai, M.D., indicating the
> claimant cannot sustain even sedentary exertion (25F). This
> assessment is not persuasive because it is merely a check-box form
> with few, if any, references to specific clinical or diagnostic

findings to support the expressed opinions. Furthermore, the reported limitations are not consistent with the other medical opinions of record or supported by the aforementioned medical evidence. Nor are they consistent with other medical evidence of record. For example, in September 2019, the claimant was observed to be in no distress and to have normal range of motion in her neck, intact sensation, normal muscle tone, and 5/5 strength (27F/12). In fact, Dr. Tsai's own clinical findings do not support the limitations he proposes (26F).

(T. 21-22.) With the exception of the one example from the September 2019 record cited in this paragraph, the ALJ did not articulate how the "reported limitations [were] not consistent with the other medical opinions of record or supported by the aforementioned medical evidence," nor did she articulate how "Dr. Tsai's own clinical findings do not support the limitations he proposes." (T. 21-22.) Rather, the ALJ merely cites the exhibits she references, including a 380-page document filled with Plaintiff's treatment notes from St. Joseph's Hospital Health Center. (T. 22.)

The Court finds that the reference to Dr. Tsai's opinion as a "check-box form," which Plaintiff contends was improper, is not reversible error on its own.[9] However, the Court finds that the ALJ did not adequately address the supportability and consistency factors under the pertinent regulations with respect to her finding that Dr. Tsai's assessment of Plaintiff's physical limitations was unpersuasive. "[R]ather than analyzing the supportability and consistency factors

---

[9]     *Compare Halloran v. Barnhart*, 362 F.3d 28, 31, n.2 (2d Cir. 2004) (stating that a "standardized form . . . furnished by the New York State Office of Temporary Disability Assistance . . . is only marginally useful for purposes of creating a meaningful and reviewable factual record") *with Allen v. Comm'r of Soc. Sec.*, 18-CV-6168, 2019 WL 4894102, at *3 (W.D.N.Y. Oct. 4, 2019) ("While it is true that [the physician's] opinion was rendered on a form that required him to check or circle certain limitations without asking him to provide a corresponding written explanation, it does not necessarily follow that this opinion lacked support otherwise available from the medical record, or that the style of the form, alone, warranted discounting [the physician's] opinion.").

as applied to [Dr. Tsai's opinion], the only reasoning the ALJ provided was entirely conclusory . . . ." *Prieto v. Comm'r of Soc. Sec.*, 20-CV-3941, 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021); *Melissa S.*, 2022 WL 1091608, at *4 ("Broad, conclusory statements that an opinion is not consistent with the medical record are inadequate under the Commissioner's regulations."). "The ALJ's conclusory analysis precludes the Court from undertaking meaningful review of [her] evaluation of [Dr. Tsai's] opinion." *Jaleesa H. v. Comm'r of Soc. Sec.*, 20-CV-1180, 2022 WL 174337, at *6 (W.D.N.Y. Jan. 18, 2022). This is especially so where, as here, the medical opinion is from Plaintiff's treating physician. *Warren I v. Comm'r of Soc. Sec.*, 20-CV-0495, 2021 WL 860506, at *8 (NDNY Mar. 8, 2021) (Baxter, M.J.). Although the new regulations do not require an ALJ to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," 20 C.F.R. § 416.920c(a), "the longitudinal record contains other evidence that could, arguably, support the treating source's restrictive opinions." *Warren I.*, 2021 WL 860506, at *8. The Court therefore finds that this error requires remand.[10]

Likewise, although "an ALJ is not required to explicitly analyze every piece of conflicting evidence in the record," "the ALJ's determination should not be premised on an inaccurate or incomplete review of the record." *Andrew G. v. Comm'r of Soc. Sec.*, 19-CV-0942, 2020 WL 5848776, at *9 (N.D.N.Y. Oct. 1, 2020). Based on the ALJ's decision, the Court is unclear whether the ALJ reviewed the Concussion Clinic treatment notes spanning between December 2015 and November 2017, which include medical findings that potentially support Dr.

---

[10]      *See Vellone v. Saul*, 20-CV-0261, 2021 WL 319354, at *4 (S.D.N.Y. Jan. 29, 2021) ("Eschewing rote analysis and conclusory explanations, the ALJ must discuss the 'crucial factors in any determination . . . with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence."); *Jaleesa H.*, 2022 WL 174337, at *6; *Prieto*, 2021 WL 3475625, at *13; *Warren I.*, 2021 WL 860506, at *8.

Tsai's medical opinion and limitations. (T. 299-313, 371-450, 963-68.) In her decision, the
ALJ's only reference to Plaintiff's treatment at the Concussion Clinic was her statement that
Plaintiff no longer attends those appointments or receives care from the Clinic, which the ALJ
used to support her position regarding Plaintiff's treatment noncompliance. (T. 23.) "On its own,
it is arguable whether this is sufficient error to warrant remand, but in light of [the Court's]
recommendation to remand for further development of [the ALJ's findings regarding Dr. Tsai's
assessment]," the Court recommends that the ALJ address the Concussion Clinic notes at Step
Four. *Laboriel v. Saul*, 18-CV-5294, 2019 WL 6831762, at *9 (S.D.N.Y. Aug. 22, 2019); 20
C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the
relevant medical and other evidence.").

### 3.   Opinions of Drs. Hughes and Jacob

The Court begins its analysis of the opinions of Drs. Hughes and Jacob by finding that
they are not stale. Plaintiff argues that remand is required because Drs. Hughes and Jacob did not
have an opportunity to review later treating physicians' opinions (i.e., the opinions of Drs. Tsai
and Ditota) that contained greater limitations. (Dkt. No. 8, at 21-22.) "A medical opinion may
become stale 'if the claimant's condition deteriorates after the opinion is rendered and before the
ALJ issues his decision.'" *Maxwell H. v. Comm'r f Soc. Sec.*, 19-CV-0148, 2020 WL 1187610,
at *5 (N.D.N.Y. Mar. 12, 2020) (Kahn, J.) (quoting *Clute ex rel. McGuire v. Comm'r of Soc.
Sec.*, 18-CV-0030, 2018 WL 6715361, at *5 (W.D.N.Y. Dec. 21, 2018)). A gap of time between
when the medical professional provides the opinion and the disability hearing will not, on its
own, render the opinion invalid, "but a 'meaningful change' in the plaintiff's condition during
that gap will do so." *Maxwell H.*, 2020 WL 1187610, at *5 (quoting *Lamar v. Comm'r of Soc.
Sec.*, 18-CV-0829, 2020 WL 548376, at *3 (W.D.N.Y. Feb. 4, 2020)); *McLymond v. Berryhill*,

16-CV-6180, 2018 WL 1367335, at *9 (W.D.N.Y. Mar. 16, 2018) ("[A] medical opinion does not become stale merely because it pre-dates other evidence in the record, where . . . the subsequent evidence does not undermine the opinion."). A "[s]ignificant deterioration or change in a claimant's impairments is thus a necessary factor in finding staleness." *Diane B. v. Comm'r of Soc. Sec.*, 19-CV-0628, 2021 WL 1975400, at *5 (W.D.N.Y. May 18, 2021).

In this case, the only change in Plaintiff's condition that she identifies is Dr. Ditota's diagnosis of "multiple vision disorders, including double vision or diplopia, that were not contained in the treatment notes reviewed by Drs. Hughes and Jacob." (Dkt. No. 8, at 22.)[11] However, as Defendant points out, both Drs. Hughes and Jacob were well aware of Plaintiff's complaints regarding her vision, as well as the treatment she received from her optometrist. (Dkt. No. 11, at 19-20; T. 271, 340, 343-44, 346.) Dr. Hughes noted Plaintiff's comment that she "has problems reading and has blurry/double vision," and Dr. Jacob noted Plaintiff's comment that "she has problems with blurred vision." (T. 271, 343.)

Based on these facts, the Court does not find that Dr. Ditota's assessment (and specifically his diagnosis of double vision or diplopia) constitutes a "meaningful change" or "significant deterioration" in Plaintiff's condition that would render stale the opinions of Drs. Hughes and Jacob. *Maxwell H.*, 2020 WL 1187610, at *5; *Diane B.*, 2021 WL 1975400, at *5. This outcome is further supported by the fact that Dr. Ditota's opinion "did not provide any additional information concerning Plaintiff's functional limitations." *McLymond*, 2018 WL

---

[11]   Plaintiff does not identify any "meaningful changes" that occurred related to Dr. Tsai's opinion. (Dkt. No. 8, at 22.) Rather, Plaintiff merely states that "Dr. Tsai provided his opinion on December 9, 2019, and did not start treating Plaintiff until July 14, 2017, which was after the reviews of both Drs. Hughes and Jacob." (*Id.*) This gap in time between the opinions, on its own, does not render stale the opinions of Drs. Hughes and Jacob. *Maxwell H.*, 2020 WL 1187610, at *5.

1367335, at *9. The ALJ therefore did not err in relying upon the opinions of Drs. Hughes and Jacob.

### 4.   Opinions of Dr. Ganesh and the State Agency Doctors

The Court finds that the ALJ properly reviewed and addressed the opinions from Dr. Ganesh and the state agency doctors. Plaintiff challenges the ALJ's reliance on these opinions in two ways: (1) Plaintiff argues that Drs. Miller and Siddiqui did not reference specific medical evidence to support their opinions, nor did the ALJ indicate what other evidence is consistent with these physicians' assessments; and (2) Plaintiff argues that the ALJ improperly evaluated Dr. Ganesh's opinion by not discussing its consistency with other portions of the medical record, including the positive findings from the Concussion Clinic notes. (Dkt. No. 8, at 22-24.)

Neither challenge requires remand. First, the opinions from Dr. Miller and Dr. Siddiqui reference specific medical evidence. In her decision, the ALJ stated that the findings of Dr. Miller and Dr. Siddiqui were consistent with Dr. Ganesh's opinion and were "supported by a detailed narrative analysis that contains references to specific medical evidence . . . ." (T. 20.) *See also* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources . . . in the claim, the more persuasive the medical opinion(s) . . . will be."). As Defendant articulates in her motion, Dr. Miller discussed the normal findings from Plaintiff's most recent examination, as well as the various diagnoses from her treating providers, when rendering his opinion. (T. 64-74.) Dr. Siddiqui then affirmed Dr. Miller's determination. (T. 75-85.) The Court therefore disagrees that "[t]he ALJ's vague reference to the State agency reviewers' opinion citing to medical evidence is too vague and also inaccurate." (Dkt. No. 8, at 22.)

Second, the ALJ's decision indicates that she compared Dr. Ganesh's opinion to her own treatment notes, as well as to the opinions provided by Drs. Jacob and Hughes. (T. 20-21.). *See also Acosta Cuevas v. Comm'r of Soc. Sec.*, 20-CV-0502, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021) ("Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them.") (citing 20 C.F.R. § 404.1520c(c)(2)). In fact, the ALJ stated the following about that comparison: "[Although] there is clearly some support for Dr. Ganesh's and the state agency's opinions, I am generally more persuaded by the aforementioned assessments from Dr. Hughes and Dr. Jacob," which the ALJ found were "supported by extensive evaluations that included interviewing and examining the claimant, as well as reviewing many of the claimant's other medical records," and which also supported "somewhat greater limitations than reported by Dr. Ganesh and the state agency physicians." (T. 21.) The Court is satisfied that this is not a circumstance in which the ALJ "rel[ied] solely on agency consultants while dismissing treating physicians in a conclusory manner," as Plaintiff contends. *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021). The Court therefore finds that the ALJ properly reviewed the opinions of Dr. Ganesh and the State agency consultants.

    **B.**    **Whether the ALJ Erred When Finding that Plaintiff's Subjective Complaints Were Unsupported by Comparing Them to the RFC Finding**

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 8.) To those reasons, the Court adds the following analysis.

Plaintiff challenges the ALJ's discounting of her alleged symptoms to the extent they did not conform to the RFC determination. (Dkt. No. 8, at 24.) Specifically, the ALJ included the following paragraph in her decision regarding Plaintiff's allegations:

> In evaluating the claimant's work-related abilities, I have considered the claimant's alleged symptoms and the effects they have purportedly had on her daily functioning. However, the record as a whole does not support limitations beyond those provided for within the above-found residual functional capacity. Therefore, the claimant's allegations have been found to affect her ability to work only to the extent they can reasonably be accepted as consistent with the objective medical evidence.

(T. 20.)

"The Court has found no support in the regulations or caselaw from this Circuit supporting the propriety of basing a credibility determination solely upon whether the ALJ deems the [plaintiff's] allegations to be congruent with the ALJ's own RFC finding." *Beck v. Colvin*, 13-CV-6014, 2014 WL 1837611, at *12 (W.D.N.Y. May 8, 2014) (gathering cases). Although "[a] [plaintiff's] credibility may be questioned if it is inconsistent with the medical evidence, . . . it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." *Gehm v. Astrue*, 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013) (Hurd, J.); *Gough v. Saul*, 799 F. App'x 12, 15 (2d Cir. 2020) (summary order) ("The fact that Gough's testimony conflicted with the ALJ's conclusion that she could work full time, when her testimony was consistent with her treatment records, is not a basis to discount her credibility.").

Defendant attempts to side-step this issue, arguing that the lack of congruity between Plaintiff's alleged symptoms and the RFC "was hardly [the ALJ's] sole justification for finding Plaintiff's statements less persuasive." (Dkt. No. 11, at 23.) Defendant argues that the ALJ made clear that "Plaintiff's allegations were credited 'only to the extent they [could] reasonably be accepted as consistent with the objective medical and other evidence,'" and that the ALJ provided additional justifications to disregard Plaintiff's allegations, such as Plaintiff's improvement with treatment, her documented history of treatment noncompliance, and her

extensive daily activities. (*Id.* at 23-24.) "However, 'an ALJ is required to assess a claimant's credibility before determining [her] RFC and identify which statements about . . . [her] symptoms are consistent with specifically identified evidence in the record.'" *McGuire v. Comm'r of Soc. Sec.*, 17-CV-6687, 2019 WL 1172809, at *3 (W.D.N.Y. Mar. 13, 2019) (quoting *Box v. Colvin*, 3 F. Supp. 3d 27, 48 (E.D.N.Y. 2014)). "The ALJ must also 'specify those statements that [she] determines are inconsistent with medical evidence in the record and explain why [she] chooses to discredit them with reference to the applicable regulatory factors.'" *McGuire*, 2019 WL 1172809, at *3 (quoting *Box*, 3 F. Supp. 3d at 48). The ALJ did neither of these things in this case, providing only a conclusory statement that the ALJ credited Plaintiff's allegations "only to the extent they can reasonably be accepted as consistent with the objective medical evidence." (T. 20.)

Further, the ALJ included the other cited justifications (i.e., improvement with treatment, treatment noncompliance, and extensive daily activities) in the paragraph in which the ALJ found these activities were "not consistent with significant work-related *mental* limitations." (T. 23 [emphasis added].) The ALJ does not address how the cited justifications may affect potential physical limitations. (T. 23.) Instead, the ALJ seemingly relies solely on the incongruity between Plaintiff's allegations regarding her physical symptoms and the RFC determination as support for discounting Plaintiff's allegations. (T. 20.) In doing so, the ALJ erred, and this issue is subject to remand.[12]

---

[12]     Because the Court already found that the ALJ's decision is subject to remand on other grounds, including the ground that the ALJ should review and address the medical evidence supporting Dr. Tsai's medical opinion and the notes from the Concussion Clinic in making her Step Four determination, the Court need not, and does not, address Plaintiff's second argument regarding the ALJ allegedly ignoring the consistency between Plaintiff's symptoms and Dr. Tsai's medical opinion and the Concussion Clinic treatment notes. (Dkt. No. 8, at 24-25.)

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is

<u>**GRANTED**</u>; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is

<u>**DENIED**</u>; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

<u>**VACATED**</u>; and it is further

**ORDERED** that this matter is <u>**REMANDED**</u> to Defendant, without a direct finding of

disability, for further proceedings consistent with this Decision and Order, pursuant to sentence

four of 42 U.S.C. § 405(g).

Dated: June 7, 2022
       Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge

28